ROBINSON MILLER LLC
Keith J. Miller
One Newark Center, 19th Floor
Newark, New Jersey 07102
(973) 690-5400
kmiller@rwmlegal.com

-and-

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
Craig S. Mende
James D. Weinberger
Jason D. Jones
866 United Nations Plaza
New York, New York 10017
(212) 813-5900

*Attorneys for Plaintiff Robert Kirkman, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT KIRKMAN, LLC,<br><br>                              *Plaintiff*,<br><br>                    v.<br><br>PHILLIP THEODOROU, STEVEN THEODOROU, ANNA THEODOROU, JEFFREY HELLER, and MOHAMED ELKADY,<br><br>                              *Defendants*. | Civil Action No. _____ |

## **COMPLAINT**

Plaintiff Robert Kirkman, LLC ("Plaintiff"), by its undersigned attorneys, Robinson

Miller LLC and Fross Zelnick Lehrman & Zissu, P.C., for its Complaint against Defendants

Phillip Theodorou, Steven Theodorou, Anna Theodorou, Jeffrey Heller, and Mohamed Elkady

("Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff, a business formed by renowned comics creator Robert Kirkman, has for many years used the trademark THE WALKING DEAD ("THE WALKING DEAD Mark") in connection with its popular series of comic books and graphic novels conceived and prepared by Mr. Kirkman.  Plaintiff's licensee, AMC Network Entertainment LLC ("AMC"), has also long used THE WALKING DEAD Mark in connection with the groundbreaking television series *The Walking Dead* (the "Series"), of which Mr. Kirkman is executive producer, and in connection with the licensing of an extensive line of Series-related merchandise.  The Series, which now in its sixth season of production, is the most watched drama in cable television history.

2.      This action arises out of the use of or extensive preparations by Defendant Phillip Theodorou, a fabric screen-printer, and the other Defendants, to use Plaintiff's THE WALKING DEAD Mark in connection with an array of goods and services that are neither produced nor licensed by Plaintiff.  In adopting THE WALKING DEAD Mark for their own purposes, Defendants are attempting to co-opt for their own benefit both Plaintiff's famous mark and the goodwill associated with it.  By their conduct, Defendants are infringing and diluting THE WALKING DEAD Mark.  Not only is such conduct damaging Plaintiff, but it will also deceive the relevant public.

3.      To protect the enormous goodwill built up in THE WALKING DEAD Mark over many years, and to protect consumers from Defendants' deceptive conduct, Plaintiff brings this action for infringement of federally registered trademarks under Section 32(1) of the U.S. Trademark (Lanham) Act of 1946, as amended, 15 U.S.C. § 1114(1); unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); and related claims arising under the laws of the State of New Jersey and common law.  Plaintiff seeks injunctive relief; destruction of any infringing

goods; monetary relief including recovery of Defendants' profits and up to three times the damages sustained by Plaintiff; and an award of attorney's fees, all as authorized by Sections 34, 35 and 36 of the Lanham Act, 15 U.S.C. § 1116-1118, together with such other relief as the Court deems just and proper.  Plaintiff also seeks a judicial declaration pursuant to 28 U.S.C. § 2201 that any use of THE WALKING DEAD Mark by Defendants and/or any party in active concert or participation with Defendants in connection with any goods or services will constitute trademark infringement, unfair competition, and trademark dilution under the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), and 1125(c), false designation of origin, unfair competition, and deceptive and unfair trade practices under New Jersey state law, and unfair competition under common law.

## THE PARTIES

4.      Plaintiff Robert Kirkman, LLC is a limited liability company organized and existing under the laws of the state of Kentucky, with headquarters located at 8931 Ellis Avenue, North Tower, Floor 3, Los Angeles, California 90034.

5.      Upon information and belief, defendant Phillip Theodorou is an individual residing at 446 Ewingville Road, Ewing, New Jersey 08638.

6.      Upon information and belief, defendant Steven Theodorou is an individual residing at 446 Ewingville Road, Ewing, New Jersey 08638.

7.      Upon information and belief, defendant Anna Theodorou is an individual residing at 446 Ewingville Road, Ewing, New Jersey 08638.

8.      Upon information and belief, defendant Jeffrey Heller is an individual residing at 602 Fourth Street, Riverside, New Jersey 08075.

9.      Upon information and belief, defendant Mohamed Elkady is an individual residing at 801 Willopenn Drive, Apt. J203, Southampton, Pennsylvania 18966.

## JURISDICTION & VENUE

10.    This action arises under the federal Lanham Act, 15 U.S.C. § 1051 *et seq.*, and applicable state and common law.

11.    The Court has original jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, Section 2201 of the Declaratory Judgment Act, 28 U.S.C. § 2201, and under Sections 1331 and 1338(a) and (b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) & (b).  The Court has supplemental jurisdiction over Plaintiff's state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

12.    This Court has personal jurisdiction over Defendants because Defendants do business in, have substantial contacts with, reside in and/or may be found in the District of New Jersey, and a substantial portion of the events at issue have arisen and will arise in this judicial district.

13.    Upon information and belief, venue is proper in this district pursuant to Section 1391(b) of the United States Judicial Code, 28 U.S.C. § 1391(b), because one or more of Defendants reside in this judicial district, a substantial part of the events at issue and Defendants' acts of infringement have occurred in this district, and Plaintiff is suffering harm in this district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**A.**    **Plaintiff and THE WALKING DEAD Mark**

14.    Plaintiff is the owner of all rights in the famous THE WALKING DEAD Mark.

15.    Since at least as early as 2003, Plaintiff has continuously used THE WALKING DEAD Mark to identify its award-winning comic series chronicling the lives of survivors of a zombie apocalypse.  Plaintiff's THE WALKING DEAD comic book is now in its 144th issue, and has been frequently republished in trade paperbacks, hardcovers, including collectors' editions, and limited omnibus editions.

16.     Since 2010, when *The Walking Dead* television series began, THE WALKING DEAD Mark has also been extensively used by Plaintiff's licensee AMC in connection with the Series and a wide array of Series-related goods, services and events.

17.     The Series is based loosely on Plaintiff's comic books.  Like the comic books, the Series tracks the lives of living survivors in a world overrun by zombies and the struggles of those survivors to adapt to a violent and dangerous environment.

18.     The Series has achieved immense popularity among the viewing public, and has the highest total viewership of any series in cable television history.  The October 2014 premiere of Season 5 of the Series reached 17.3 million viewers, making it the most-watched series episode in cable history.  Season 6 of the Series recently premiered as the top-rated program in its time slot, ahead of many network programs including Sunday Night Football.

19.      The Series has also garnered significant critical acclaim.  Among other awards, the Series was named one of the top 10 television programs of 2010 and 2012 by the American Film Institute Awards and has received multiple Emmy and People's Choice awards.  The Series has also been nominated for a number of additional awards, including the Writers Guild of America Award for Television: New Series, and the Golden Globe Award for Best Television Series – Drama.

20.     In addition, through AMC, its corporate affiliates and sublicensees, Plaintiff has marketed an array of Series-related goods and services under THE WALKING DEAD Mark, including, but not limited to, t-shirts, sweatshirts, shorts, onesies, flip-flops, and other apparel; mugs and glassware; pens; household furnishings; jewelry; bags and luggage tags; action figures; food; construction sets; trivia games; dart boards; video games; guitars; and dog collars. Moreover, Plaintiff, on its own and through its direct licensees, markets an array of merchandise based on THE WALKING DEAD comic book series, including but not limited to comic books,

collected comic editions, novels, lunch boxes, figurines, vinyl toys, vinyl replica props, foam

dart blasters, card games, board games, statues, adhesive bandages, collector tins, coin banks, ice

trays, gelatin molds, handbags, tote bags, wallets, key chains, belt buckles, phone cases, bottle

openers, bobble heads, puzzles, knives, swords, gold balls, coffee, beer, dog tags, wrapping

paper, lamps, book ends, stickers, pins/buttons, blankets, towels, cardboard standees, mousepads,

Halloween costumes, makeup kits, lanyards, beer koozys, magnets, patches and fabric bolts.

21.     As a result of Plaintiff's reputation, use, sales and marketplace success and a

significant investment in advertising and promotion, THE WALKING DEAD Mark has

developed tremendous secondary meaning and significance in the minds of the public and has

become a strong and famous trademark identifying Plaintiff's goods and services exclusively.

As such, THE WALKING DEAD Mark represents enormous goodwill and is an extremely

valuable asset of Plaintiff.

22.     In addition to the common law rights built up in THE WALKING DEAD

Mark through more than a decade of use, Plaintiff also owns numerous federal trademark

registrations for THE WALKING DEAD Mark that cover a variety of products and services,

including the following:

| U.S. Reg. No. | Goods and Services | First Use | Reg. Date |
|---|---|---|---|
| 4007681 | Class 9:  DVDs featuring an on-going fictional dramatic television program | March 2011 (Class 9) | August 02, 2011 |
| | Class 41:  Entertainment services in the nature of an on-going fictional dramatic television series; providing information about a television series via an on-line global computer network; providing online computer games | October 2010 (Class 41) | |

| 4314918 | Class 9:  Video recordings featuring fictional dramatic television programming and music; sound recordings featuring fictional dramatic television programming and music; downloadable computer games; interactive video game programs; computer game cartridges and discs; downloadable computer game software for use with mobile telephones and personal computers; downloadable multimedia file containing artwork, text, audio, video, games, and internet web links relating to music and television; electronic game programs; electronic game software for cellular telephones; electronic game software for handheld electronic devices; electronic game software for wireless devices; slot machines; video game cartridges and discs; video game software | August 2012 | April 02, 2013 |
| 4429084 | Class 41:  Fan club services | September 2010 | November 05, 2013 |
| 4443715 | Class 16:  Comic books; Graphic novels | October 2003 | December 03, 2013 |

23.     Pursuant to Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b), these registrations serve as *prima facie* evidence of the validity of the registered THE WALKING DEAD Mark, of Plaintiff's ownership of the registered mark, and of Plaintiff's exclusive right to use the registered mark in connection with the goods and services identified in the registrations.

24.     In addition, Plaintiff owns a pending use-based trademark application, U.S. trademark Application Serial No. 86/145,914 (the "Kirkman Application"), covering the following goods for which THE WALKING DEAD Mark, all based on first use dating back to 2011 or 2012:

- "Books relating to a dramatic television series, poster books, bookends, posters, art prints, photographs, trading cards, calendars, stickers, bumper stickers, pens, greeting cards, paper party favors, paperweights" in International Class 16;

- "Busts made of resins, plastics, polyresin, gypsum, polyurethane, wax, wood, fabric and mixed media consisting of the foregoing materials; statues made of resins, plastics, polyresin, gypsum, polyurethane, wax, wood, fabric and mixed media consisting of the foregoing materials; sculptures of resins, plastics, polyresin,

gypsum, polyurethane, wax, wood, fabric and mixed media consisting of the foregoing materials; figurines made of resins, plastics, polyresin, gypsum, polyurethane, wax, wood, fabric and mixed media consisting of the foregoing materials; picture frames; plastic key chains; non-metal and non-leather key chains" in International Class 20;

- "Clothing, shirts, t-shirts, sweatshirts, jackets, sleepwear, loungewear, bathrobes, beachwear, underwear, socks, infantwear, headwear, footwear, belts, head wraps, Halloween costumes, masquerade costumes, costume accessories, namely, novelty wigs" in International Class 25; and

- "Parlour games, party games, tabletop games, board games, card games, action skill games, target games, dart games, puzzles, action figures, toy figures, bobblehead dolls, amusement game machines, pinball and pinball-type games, costume masks, lottery tickets, toy vehicles, toy weapons, toy model and replica weapons, costume accessories, namely, weapon props, fake scars" in International Class 28.

**B.    Defendants' Infringing Conduct**

25.    Defendants have embarked on a comprehensive effort to (i) usurp Plaintiff's THE WALKING DEAD Mark for use in connection with a large number of goods and services without any authorization from Plaintiff, and (ii) interfere with Plaintiff's ability to protect its own mark in connection with legitimate, authorized goods and services.

*(i)    Defendants' Broad-Based, Continuing, Unauthorized Series*
       *of Trademark Filings in Spite of Plaintiff's Express Objection*

26.    On December 2, 2013, Defendants Anna Theodorou and Phillip Theodorou filed U.S. trademark Application Serial No. 86/133,235 with the United States Patent and Trademark Office (the "USPTO") to register THE WALKING DEAD (the "Infringing Mark") based on an intent to use that mark in connection with "t-shirts" in International Class 25.  In its filing, Defendants attested, under oath, that they had "a bona fide intention to use . . . the mark in commerce on or in connection with the identified goods and/or services."

27.    Following that initial filing, Defendants proceeded to pursue a broad-based filing program, filing numerous additional unauthorized trademark applications for the Infringing Mark for a wide range of additional goods and services:

8

- On January 16, 2014, Defendants Anna Theodorou and Phillip Theodorou filed U.S. trademark Application Serial No. 86/166,802 with the USPTO to register the Infringing Mark based on an intent to use that mark in connection with "Restaurant services and themed restaurant services, namely, providing of food and beverages for consumption on and off the premises" in International Class 44.

- On February 1, 2014, Defendants Anna Theodorou and Phillip Theodorou filed U.S. trademark Application Serial No. 86/181,789 with the USPTO to register the Infringing Mark based on an intent to use that mark in connection with "Coffee" in International Class 30.

- On February 4, 2014, Defendants Anna Theodorou and Phillip Theodorou filed U.S. trademark Application Serial No. 86/183,334 with the USPTO to register the Infringing Mark based on an intent to use that mark in connection with "Bottled water" in International Class 32.

- On  March 30, 2014, Defendants Phillip Theodorou and Mohamed Elkady filed U.S. trademark Application Serial No. 86/236,569 with the USPTO to register the Infringing Mark based on an intent to use that mark in connection with "Beverage glassware, cups, mugs, drinking glasses" in International Class 21.

In connection with each of these applications, the Defendants named in the application swore under oath to their bona fide intent to use the Infringing Mark in connection with the recited goods.

28.     On April 7, 2014, Plaintiff's counsel sent a letter to Defendants Anna Theodorou, Phillip Theodorou, and Mohamed Elkady informing them of Plaintiff's rights in THE WALKING DEAD Mark and demanding that they immediately cease their unauthorized

attempts to register the Infringing Mark and halt their plans to use the Infringing Mark for the goods and services recited in their pending trademark applications.

29.     Notwithstanding the fact that Defendants were, as of April 7, 2014, on actual notice of Plaintiff's rights in THE WALKING DEAD Mark, Defendants went on to file still more applications with the USPTO to register the Infringing Mark for a vast variety of goods, again, each time, swearing under oath to a bona fide intention to use the mark in connection with the recited goods.  Specifically:

- On May 2, 2014, Defendants Steven Theodorou and Jeffrey Heller filed U.S. trademark Application Serial No. 86/270,745 with the USPTO to register the Infringing Mark based on an intent to use that mark in connection with "Cosmetic products, namely, lipsticks, lip gloss, lip liners, lip balms, eye shadows, eye lining pencils, liquid eye liners, eye makeup, mascara, eyebrow pencils, artificial eyelashes, blushers, bronzers, multi-use cosmetic sticks, foundation makeup, pressed powder, loose powder, makeup remover, concealers, eye make-up palettes, lip gloss palettes, make-up sets, multi-use colored creams, powders and gels for use on face; nail polish, nail enamel, nail polish remover; non-medicated skin care products, namely, cleansers, exfoliators, toners, eye creams, cleansing wipes, moisturizing spritzers, tinted moisturizers; fragrances for personal use" in International Class 3.

- On October 9, 2014, Defendants Steven Theodorou and Phillip Theodorou filed U.S. trademark Application Serial No. 86/418,856 with the USPTO to register the Infringing Mark based on an intent to use that mark in connection with "cigarillos, cigars, ashtrays, match boxes, matches, lighters for smokers" in International Class 34.

- On March 15, 2015, Defendants Steven Theodorou and Phillip Theodorou filed U.S. trademark Application Serial No. 86/564,355 with the USPTO to register the Infringing Mark based on an intent to use that mark in connection with "Candles for lighting; Candles for night lights; Perfumed candles; Scented candles" in International Class 4.

- On July 24, 2015, Defendants Steven Theodorou and Phillip Theodorou filed U.S. trademark Application Serial No. 86/703,323 with the USPTO to register the Infringing Mark based on an intent to use that mark in connection with "Textile shopping bags" in International Class 18.

- On July 24, 2015, Defendants Steven Theodorou and Phillip Theodorou filed U.S. trademark Application Serial No. 86/703,328 with the USPTO to register the Infringing Mark based on an intent to use that mark in connection with "carpets" in International Class 27.

*(ii)*      *Defendants' Interference With Plaintiff's Rights*

30.      Defendants' unauthorized, blunderbuss trademark filings have directly threatened Plaintiff's ability to fully protect its THE WALKING DEAD mark.  Specifically, applications by Defendants have been cited against the Kirkman Application by the USPTO and blocked the Kirkman Application from proceeding, thereby interfering with Plaintiff's ability to secure the full protection afforded by registration of the mark for all of the goods set forth in the Kirkman Application.

31.      On August 20, 2014, Plaintiff filed a Notice of Opposition with the Trademark Trial and Appeal Board ("TTAB") against Application Serial No. 86/166,802.  That opposition proceeding was instituted as Opposition No. 91217941.

32.     On August 25, 2014, Plaintiff filed a Notice of Opposition with the TTAB against Application Serial Nos. 86/181,789 and 86/183,334.  That opposition proceeding was instituted as Opposition No. 91217992.

33.     On September 10, 2014, Plaintiff filed a Notice of Opposition with the TTAB against Application Serial No. 86/133,235.  That opposition proceeding was instituted as Opposition No. 91218267.

34.     On October 3, 2014, Plaintiff filed a Notice of Opposition with the TTAB against Application Serial No. 86/270,745.  That opposition proceeding was instituted as Opposition No. 91218669.

35.     On May 19, 2015, Plaintiff filed a Notice of Opposition with the TTAB against Application Serial No. 86/418,856.  That opposition proceeding was instituted as Opposition No. 91222005.

36.     On July 8, 2015, Plaintiff filed a Notice of Opposition with the TTAB against Application Serial No. 86/564,355.  That opposition proceeding was instituted as Opposition No. 91222719.

37.     In each of its Notices of Opposition (collectively, the "Notices of Opposition") filed in connection with Defendants' attempts to register the Infringing Mark, Plaintiff alleged that THE WALKING DEAD Mark was used and became famous in the United States long before Defendants filed their applications for the Infringing Mark, and that Defendants' use and registration of the Infringing Mark for the goods and services set forth in Defendants' applications was likely to cause confusion with and to dilute THE WALKING DEAD Mark.

*(iii)*     *Defendants' Impending Use of the Infringing Mark*

38.     Despite their clear knowledge of Plaintiff's prior rights in THE WALKING DEAD Mark and the knowledge that their use of the Infringing Mark violates such rights, upon information and belief, Defendants have now taken concrete steps to use the Infringing Mark in connection with a variety of goods and services.

39.     Upon information and belief, Defendants have undertaken extensive planning and development efforts in connection with their intended use of the Infringing Mark.

40.     Upon information and belief, Defendants are preparing to open a health food restaurant in the State of New Jersey under the Infringing Mark, to be located in either Princeton, New Jersey or on or around U.S. Route 206.

41.     Upon information and belief, Defendants' restaurant will sell custom food items under the Infringing Mark and will sell merchandise under the Infringing Mark.

42.     Upon information and belief, Defendant Phillip Theodorou owns a screen-printing company called We Print the World, and is capable of commencing manufacture of products featuring the Infringing Mark – including t-shirts, textile shopping bags, and other goods for which Defendants have attempted to register the Infringing Mark – at a moment's notice.

43.     Defendants' manufacture and sale of products under the Infringing Mark could be accomplished – and may already have been accomplished – without Plaintiff's immediate knowledge.

44.     Defendants have never been associated or affiliated with Plaintiff in any way and Plaintiff has never authorized or otherwise licensed Defendants' use of the Infringing Mark in connection with a health food restaurant or any other products or services in the United States or elsewhere.

45.     Defendants began preparations to use the Infringing Mark in connection with a vast array of goods and services long after Plaintiff commenced its use of THE WALKING DEAD Mark in connection with many of the same goods and services.

46.     Defendants' use of the Infringing Mark is likely to cause actual confusion in the marketplace, as consumers are virtually guaranteed to falsely believe that Defendants and their goods and services offered under the Infringing Mark are authorized by, endorsed by, associated with, or are otherwise connected with Plaintiff or its THE WALKING DEAD Mark.

47.     Defendants' preparations to use the Infringing Mark in connection with a health food restaurant, food, t-shirts and other goods and services is intentionally malicious, willful and wanton.

48.     The unauthorized use by Defendants of the Infringing Mark will unfairly and unlawfully wrest from Plaintiff control over its famous THE WALKING DEAD Mark and its reputation.

49.     Defendants' unauthorized acts as described herein will cause irreparable damage to Plaintiff's business and goodwill unless restrained by this Court.

50.     Plaintiff has no adequate remedy at law.

### FIRST CLAIM FOR RELIEF:
### FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1))

51.     Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

52.     The Infringing Mark adopted by Defendants is identical to Plaintiff's THE WALKING DEAD Mark.

53.     The goods and services that Defendants are offering or preparing to offer under the Infringing Mark are identical and/or closely related to services offered by Plaintiff

under its THE WALKING DEAD Mark and will be offered to the same customers who consume

or are familiar with goods and services provided under Plaintiff's THE WALKING DEAD

Mark.

54.     Defendants have no affiliation with Plaintiff.  Defendants' unauthorized use of

the Infringing Mark is likely to cause confusion, cause mistake, or deceive consumers as to the

source, sponsorship or approval of Defendants' goods and services and, specifically, to cause

consumers to believe that Defendants' goods and services are sponsored by, affiliated with,

approved by or otherwise connected with Plaintiff when such is not the case.

55.     Defendants' unauthorized use of the Infringing Mark falsely represents

Defendants as being legitimately connected with and/or authorized by Plaintiff and places

beyond Plaintiff's control its reputation and ability to control the use of the WALKING DEAD

Mark and the quality of the products and services bearing that mark.

56.     Before adopting the Infringing Mark, Defendants were on constructive notice

and, upon information and belief, were on actual notice of Plaintiff's exclusive rights in THE

WALKING DEAD Mark.  Defendants' preparations to use the Infringing Mark for goods and

services identical and/or closely related to those offered by Plaintiff under THE WALKING

DEAD Mark are therefore undertaken with full knowledge that Defendants have no right, license

or authority to use the Infringing Mark or any mark that incorporates or is confusingly similar to

THE WALKING DEAD Mark.  Defendants' use of the Infringing Mark is in willful violation of

Plaintiff's exclusive rights in THE WALKING DEAD Mark and in bad faith.

57.     Defendants' acts constitute infringement of Plaintiff's registered THE

WALKING DEAD Mark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

58.       Defendants' aforesaid conduct will cause immediate and irreparable injury to Plaintiff and will continue to both damage Plaintiff and deceive the public unless enjoined by this Court.

59.       Plaintiff has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF:
## FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a))

60.       Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

61.       Defendants' use of Defendants' Infringing Mark in connection with restaurant services, food, t-shirts and other goods and services is likely to cause confusion, mistake, or deception as to the source of Defendants' goods and services and is likely to create the false impression that the goods and services are authorized, sponsored, endorsed, licensed by, or affiliated with Plaintiff.  Defendants' actions constitute false designation of origin and false representation as to the origin of Defendants' services and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

62.       Defendants' aforesaid conduct will cause immediate and irreparable injury to Plaintiff and will continue to both damage Plaintiff and deceive the public unless enjoined by this Court.

63.        Plaintiff has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF:
## FEDERAL TRADEMARK DILUTION (15 U.S.C. § 1125(c))

64.       Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

65.       As a result of Plaintiff's extensive use and promotion of THE WALKING DEAD Mark and the goods and services offered thereunder for many years, THE WALKING

16

DEAD Mark is famous throughout the United States, is highly distinctive of Plaintiff's goods and services and is widely recognized among the consuming public as a designation of source of Plaintiff's goods and services. THE WALKING DEAD Mark became famous long before Defendants commenced any use of the identical Infringing Mark as described herein.

66.     Defendants' commercial use of the Infringing Mark in connection with a health food restaurant, food, t-shirts and other goods and services will dilute Plaintiff's famous THE WALKING DEAD Mark by impairing the distinctiveness of THE WALKING DEAD Mark, thereby lessening the capacity of that mark to identify and distinguish Plaintiff exclusively.

67.     Upon information and belief, Defendants' use of the Infringing Mark is done willfully and deliberately, commencing long after Plaintiff's THE WALKING DEAD mark became famous, and with an intent to reap the benefit of Plaintiff's goodwill and dilute the distinctiveness of THE WALKING DEAD Mark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

68.     Defendants' aforesaid conduct will cause immediate and irreparable injury to Plaintiff and will continue to both damage Plaintiff and deceive the public unless enjoined by this Court.

69.     Plaintiff has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF:
## DECEPTIVE AND UNFAIR TRADE PRACTICES
## UNDER NEW JERSEY STATE LAW (N.J. STAT. §§ 56:8-1 *et seq.*)

70.     Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

71.     As a result of Defendants' unauthorized use of the Infringing Mark, consumers are likely to be deceived or misled into believing that Defendants' goods and services

emanate from or are approved by Plaintiff.  Defendants' aforesaid conduct in connection with the

Infringing Mark is likely to cause confusion, to cause mistake, or to deceive consumers and the

trade as to the origin, sponsorship, or approval of Defendants' products, and is an unfair or

deceptive trade practice that has the capacity, tendency, or effect of deceiving or misleading

consumers, in violation of N.J. Stat. §§ 56:8-1 *et seq.*

72.     Defendants' aforesaid conduct will cause immediate and irreparable injury to

Plaintiff and will continue to both damage Plaintiff and deceive the public unless enjoined by

this Court.

73.     Plaintiff has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF:
## FALSE DESIGNATION OF ORIGIN
## UNDER NEW JERSEY STATE LAW (N.J. STAT. § 56:3-13.16)

74.     Plaintiff repeats and realleges the allegations set forth above as if fully set

forth herein.

75.     Defendants' sale and distribution of goods and services bearing copies and

imitations of Plaintiff's THE WALKING DEAD Mark is likely to cause confusion, mistake or

deception as to the source or sponsorship of Defendants' goods and services.  As a result of

Defendants' unauthorized use of THE WALKING DEAD Mark, the public is likely to believe

that Defendants' goods and services have been manufactured and/or approved by Plaintiff, and

such use falsely represents Defendants as being legitimately connected with and/or authorized by

Plaintiff and places beyond Plaintiff's control its own reputation and ability to control the use of

THE WALKING DEAD Mark and the quality of the products bearing those marks.

76.     Defendants' infringement of Plaintiff's THE WALKING DEAD Mark is

willful and intended to reap the benefit of the goodwill of Plaintiff in violation of N.J. Stat.

§ 56:3-13.16.

77.     Defendants' aforesaid conduct will cause immediate and irreparable injury to Plaintiff and will continue to both damage Plaintiff and deceive the public unless enjoined by this Court.

78.     Plaintiff has no adequate remedy at law.

### SIXTH CLAIM FOR RELIEF:
### UNFAIR COMPETITION UNDER
### NEW JERSEY STATE (N.J. STAT. § 56:4-1) AND COMMON LAW

79.     Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

80.     Defendants' unauthorized use of THE WALKING DEAD Mark is likely to cause confusion, to cause mistake, or to deceive consumers and the trade as to the origin, sponsorship, or approval of Defendants' products.  As a result of Defendants' unauthorized use of Plaintiff's mark, the public is likely to believe that Defendants' goods and services have been produced and/or approved by Plaintiff, and such use falsely represents that Defendants and/or their products and services are affiliated, connected, or associated with and/or authorized by Plaintiff and places beyond Plaintiff's control its own reputation and the use of the trademark associated with Plaintiff.

81.     Defendants' conduct is willful and intended to reap the benefit of the goodwill of Plaintiff.  Defendants' conduct constitutes unfair competition and violates the statutory (N.J. Stat. § 56:4-1) and common law of the State of New Jersey.

82.     Defendants' aforesaid conduct will cause immediate and irreparable injury to Plaintiff and will continue to both damage Plaintiff and deceive the public unless enjoined by this Court.

83.     Plaintiff has no adequate remedy at law.

**SEVENTH CLAIM FOR RELIEF:**
**DECLARATORY JUDGMENT UNDER 28 U.S.C. § 2201**

84.     Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

85.     Defendants' use of the Infringing Mark is likely to cause confusion, or to cause mistake or to deceive consumers and the public as to the source or sponsorship of Defendants' goods and services.  Consumers are likely to be misled into believing that such goods and services are manufactured, licensed, sponsored or otherwise approved by Plaintiff.

86.     Defendants' actions are in bad faith, with full knowledge of Plaintiff's prior use of, exclusive rights in and ownership of the famous THE WALKING DEAD Mark, with full knowledge of the goodwill and reputation associated with THE WALKING DEAD Mark, and with full knowledge that Defendants have no established right, license or authority to use the Infringing Mark in connection with any goods or services.

87.     Defendants' intended conduct will cause immediate and irreparable injury to Plaintiff and will both damage Plaintiff and deceive the public unless such conduct is enjoined by this Court.

88.     An actual case and live controversy has arisen and currently exists between Plaintiff and Defendants as to whether any use of the Infringing Mark by Defendants will constitute trademark infringement, unfair competition, and trademark dilution under the Lanham Act, unfair competition, false designation of origin, and deceptive and unfair trade practices under New Jersey law, and unfair competition under common law.

89.     Pursuant to 28 U.S.C. § 2201, Plaintiff is entitled to a declaratory judgment that any use of the Infringing Mark by Defendants will constitute trademark infringement of Plaintiff's THE WALKING DEAD Mark under Section 32(1) of the Lanham Act, 15 U.S.C. §

1114(1), unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), deceptive and unfair trade practices under N.J. Stat. §§ 56:8-1 *et seq.*, false designation of origin under N.J. Stat. § 56:3-13.16, and unfair competition under N.J. Stat. § 56:4-1 and common law.

90.      Plaintiff has no adequate remedy at law.

**WHEREFORE,** Plaintiff respectfully demands judgment as follows:

A.      That a preliminary and permanent injunction be issued enjoining Defendants, their agents, directors, shareholders, principals, licensees, distributors, attorneys, servants, employees, affiliates, subsidiaries and assigns, and all those persons in concert or participation with any of them from:

     i.      imitating, copying, or making unauthorized use of THE WALKING DEAD Mark;

     ii.      manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any product or service bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of THE WALKING DEAD Mark, any formatives thereof (including misspellings) or any other indicia associated with Plaintiff;

     iii.      using any simulation, reproduction, counterfeit, copy or colorable imitation of THE WALKING DEAD Mark in connection with the importation, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any product or service;

     iv.      using any false designation of origin or false description or statement, or

performing any act which is likely to lead members of the trade or public to believe that any product or service manufactured, distributed or sold by Defendants is in any manner associated or connected with Plaintiff, or is sold, manufactured, licensed, sponsored, approved or authorized by Plaintiff;

v.    transferring, consigning, selling, shipping or otherwise moving any goods, packaging or other materials in Defendants' possession, custody or control bearing the Infringing Mark ;

vi.    engaging in any other activity constituting unfair competition with Plaintiff, or constituting an infringement of THE WALKING DEAD Mark;

vii.    applying to register, registering or maintaining any registration in the United States Patent and Trademark Office or in any state trademark registry any mark consisting in whole or in part of THE WALKING DEAD Mark;

viii.    diluting or tarnishing Plaintiff's THE WALKING DEAD Mark;

ix.    registering anywhere in the world, maintaining, engaging any third party to register on its behalf, or assisting any third party in registering or maintaining, any domain name, subdomain name, URL, e-mail address, or other electronic identifier that includes THE WALKING DEAD Mark or any simulation thereof;

x.    owning, renting, purchasing or otherwise obtaining rights to any internet search term, keyword or social media handle that includes THE WALKING DEAD Mark or any simulation thereof for purposes of promoting

Defendants' products or services;

     xi.     assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (x) above.

B.     Declaring that Defendants' use of the Infringing Mark would constitute infringement of Plaintiff's registered THE WALKING DEAD Mark under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), deceptive and unfair trade practices under N.J. Stat. §§ 56:8-1 *et seq.*, false designation of origin under N.J. Stat. § 56:3-13.16, and unfair competition under N.J. Stat. § 56:4-1 and common law.

C.     Ordering that Defendants withdraw, with prejudice, all of their pending trademark applications for the Infringing Mark, and directing the USPTO to enter judgment against Defendants in each pending opposition.

D.     Directing that Defendants deliver up to Plaintiff's attorneys for destruction any and all products, labels, signs, stationery, invoices, prints, packages, promotional and marketing materials, advertisements and other materials (a) currently in their possession or under their control or (b) recalled by Defendants pursuant to any order of the Court or otherwise, incorporating, featuring or bearing the Infringing Mark, and all plates, molds, matrices and other means of making the same.

E.     Directing such other relief as the Court may deem appropriate to prevent the public from deriving the erroneous impression that any product or service manufactured, imported, advertised, promoted, distributed, displayed, produced, sold or offered for sale by Defendants is in any manner authorized by Plaintiff or related in any way to Plaintiff or its goods

and services under THE WALKING DEAD Mark.

      F.     Directing that Defendants file with the Court and serve upon Plaintiff's counsel within thirty (30) days after entry of judgment a report in writing under oath, setting forth in detail the manner and form in which they have complied with the above.

      G.     Awarding Plaintiff such damages it has sustained or will sustain by reason of Defendants' acts of trademark infringement and unfair competition and that such sums be trebled pursuant to 15 U.S.C. § 1117.

      H.     Awarding Plaintiff all gains, profits, property and advantages derived by Defendants from their unlawful conduct.

      I.     Awarding to Plaintiff exemplary and punitive damages to deter any further willful infringement as the Court finds appropriate.

      J.     Awarding to Plaintiff its costs and disbursements incurred in this action, including reasonable attorneys' fees pursuant to 15 U.S.C. §1117(a).

      K.     Awarding Plaintiff interest, including pre-judgment interest on the foregoing sums.

      L.     Awarding to Plaintiff such other and further relief as the Court may deem just and proper.

Dated:  Newark, New Jersey
        December 3, 2015

Respectfully submitted,

ROBINSON MILLER LLC

By:   *s/  Keith J. Miller*
      Keith J. Miller

One Newark Center, 19th Floor
Newark, New Jersey 07102
(973) 690-5400

   -and-

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
Craig S. Mende
James D. Weinberger
Jason D. Jones
866 United Nations Plaza
New York, New York 10017
(212) 813-5900

*Attorneys for Plaintiff Robert Kirkman, LLC*

## <u>CERTIFICATION PURSUANT TO L. CIV. R. 11.2</u>

Plaintiff, by its undersigned counsel, hereby certify that the same trademarks at issue in this action are the subject of several other actions currently pending in the following administrative opposition proceedings before the Trademark Trial and Appeal Board of the U.S. Patent & Trademark Office:

| <u>Opp. No.</u> | <u>Date Filed</u> | <u>Opposer</u> | <u>Applicant(s)</u> |
|---|---|---|---|
| 91222719 | 7/8/2015 | Robert Kirkman, LLC | Steve Theodorou, Phillip Theodorou |
| 91222005 | 5/19/2015 | Robert Kirkman, LLC | Steve Theodorou, Phillip Theodorou |
| 91218669 | 10/3/2014 | Robert Kirkman, LLC | Steven Theodorou, Jeffrey Heller |
| 91218267 | 9/10/2014 | Robert Kirkman, LLC | Phillip Theodorou, Anna Theodorou |
| 91217992 | 8/25/2014 | Robert Kirkman, LLC | Phillip Theodorou, Anna Theodorou |
| 91217941 | 8/20/2014 | Robert Kirkman, LLC | Phillip Theodorou, Anna Theodorou |

By:      *s/ Keith J. Miller*
      Keith J. Miller

ROBINSON MILLER LLC
Keith J. Miller
One Newark Center, 19th Floor
Newark, New Jersey 07102
(973) 690-5400
kmiller@rwmlegal.com

-and-

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
Craig S. Mende
James D. Weinberger
Jason D. Jones
866 United Nations Plaza
New York, New York 10017
(212) 813-5900

*Attorneys for Plaintiff Robert Kirkman, LLC*